SIGNED THIS: July 13, 2021

_____
**Mary P. Gorman
United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No.   20-71187 |
| ROBERT W. EGIZII, ) | |
| ) | Chapter 11 |
| Debtor. ) | |

# O P I N I O N

Before the Court is an Objection to Debtor's Amended Claim of Exemptions filed by Bank of Springfield. Bank of Springfield objects to the Debtor's claim that his interest in property described as 3062 West State Route 97, Pleasant Plains, Illinois, is exempt because he holds title to the property in tenancy by the entirety with his wife. For the reasons set forth herein, the objection of Bank of Springfield will be sustained, and the exemption claimed by the Debtor will be disallowed.

## I. Factual Background

Robert W. Egizii ("Debtor") filed his voluntary petition under Chapter 11 on October 29, 2020. Relevant to the issue here, he answered the question on his petition regarding where he lived as "1645 West Laurel Street, Springfield IL 62704" ("Laurel Street property"). On his Statement of Financial Affairs, he reported that he had lived at no other addresses during the last three years. He scheduled ownership of the Laurel Street property as "1/2 interest tenancy by the entirety." He valued the Laurel Street property at $835,000 and scheduled mortgage indebtedness on it to First Banker's Trust in the approximate amount of $218,000. The Debtor claimed the Laurel Street property entirely exempt under the Illinois exemption related to tenancy by the entirety.

The Debtor also scheduled ownership of property described as "3062 West State Route 97, Pleasant Plains IL 62677" ("Pleasant Plains property"). The Pleasant Plains property was further described as "Land" and as "two lots." The Debtor said that he had a "1/2 interest joint tenancy." He valued the Pleasant Plains property at $672,500. He said that the Pleasant Plains property was being purchased on a contract for deed and that $227,500 was still owed on that contract. The Debtor did not claim an exemption in the Pleasant Plains property on his original schedules.[1]

The Debtor filed amended schedules and other amended documents on multiple occasions. On January 29, 2021, the Debtor filed amended schedules

---

[1] The Debtor also scheduled ownership of an office building in Springfield in which he claimed no exemption and a condominium in Fort Lauderdale, Florida, that he claimed as fully exempt by reason of his ownership of the condominium as a tenant by the entirety with his wife. Bank of Springfield has filed an objection to the Debtor's exemption claim in the Florida condominium, and that dispute will be resolved in a separate Opinion and Order.

related to both the Laurel Street property and the Pleasant Plains property. As to the Laurel Street property, the Debtor's amended schedules maintained that the value was $835,000 but changed the amount of the Debtor's ownership interest to $820,000 and noted that his interest was subject to his spouse's homestead. He also amended his claim of exemption in the Laurel Street property to only the $15,000 homestead exemption available under Illinois law; no reference to tenancy by the entirety as to the Laurel Street property was included in the amended schedules. As to the Pleasant Plains property, the amended schedules reported that it was owned in tenancy by the entirety by the Debtor and his spouse, and $336,250—apparently his one-half interest— was claimed as exempt. Bank of Springfield objected to the newly asserted claim of exemption in the Pleasant Plains property, contending that the Pleasant Plains property is not the Debtor's homestead and therefore may not be owned in tenancy by the entirety under Illinois law.

The Debtor filed further amendments to his schedules related to the Laurel Street property on February 9, 2021. In describing his ownership of the Laurel Street property, he claimed full ownership of the $835,000 value and deleted the reference to his spouse being entitled to a homestead exemption in the property. He also deleted his claim of an Illinois homestead exemption in the Laurel Street property. He maintained in his amended schedules that he was entitled to the tenancy by the entirety exemption in the Pleasant Plains property. Bank of Springfield again objected on the basis that the Pleasant Plains property is not the Debtor's homestead.

In order to expedite resolution of the dispute as to the claim of exemption in the Pleasant Plains property, the attorneys for both the Debtor and Bank of Springfield suggested that they could submit the matter on stipulated facts. They agreed that they would examine both the Debtor and his spouse under oath and submit transcripts in lieu of an evidentiary hearing. The Debtor and Bank of Springfield have now submitted those transcripts along with a volume of documents related to the Laurel Street and Pleasant Plains properties.

At his examination, the Debtor was asked to state his current residential address and responded with the address of the Laurel Street property. He said that he purchased the property in 1978 and lived there continuously thereafter. He has been married to his wife, Jill Egizii, for approximately fourteen years and said that they have lived together at the Laurel Street property since their marriage. The Debtor admitted that the Laurel Street property is not currently for sale and that it has never been listed for sale since he purchased it. The Debtor claims the Laurel Street property as his homestead for purposes of receiving both the regular and senior citizen homestead exemptions on his real estate taxes.

The Debtor also identified the contract, signed in 2017, by which he and his wife are purchasing the Pleasant Plains property. He said that the initial down payment had come from an investment account that he believed he held jointly with his wife and that he had made the annual payments as they became due with the exception of the last payment, which his wife made with her separate funds. He said that he expected that, because of his bankruptcy,

his wife would make the final payment due on the contract this year with her own funds. On its face, the contract identified the Debtor and his wife as tenants by the entirety.

Under examination by his own attorney, the Debtor said that his intention when he and his wife bought the Pleasant Plains property was to "[e]ventually move out there." He said that he and his wife generally spend one night during the week and the weekend at the Pleasant Plains property. He admitted, however, when questioned by Bank of Springfield's attorney, that, due to his health issues—he has multiple sclerosis—the Pleasant Plains property needs physical changes or remodeling. He said that he can "get by" at the Pleasant Plains property a few days a week "but not full-time."

During her questioning, Jill Egizii responded to the question about her current residential address by saying "1645 West Laurel, Leland Grove, Illinois 62704." She emphasized that the Laurel Street property is actually in Leland Grove rather than Springfield and that it was important for her to make that distinction because she had served as an alderman and later as Mayor of Leland Grove during the period from 2006 until 2019.[2]

With respect to the Pleasant Plains property, Mrs. Egizii confirmed the testimony of the Debtor with respect to how the payments on the contract had been and were being made. She also said that she and the Debtor usually spend Wednesday and Friday through Sunday at the Pleasant Plains property. She said that, during the summer months, she does all of the mowing and

---

[2] The Court may take judicial notice that Leland Grove is a municipality with borders adjacent to the City of Springfield, Illinois.

gardening, and that work takes a great deal of time. She agreed that the plan was for her and the Debtor to "ultimately" sell the Laurel Street property and move to the Pleasant Plains property.

In addition to the presentation of the transcripts and documents, the parties have fully briefed the legal issues. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters concerning claims against the estate or the exemption of property of the estate are core proceedings. 28 U.S.C. §157(b)(2)(B). The issues before the Court arise from the Debtor's bankruptcy itself and, at least in part, from the provisions of the Bankruptcy Code and may therefore be decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III. Legal Analysis

*A. Section 522(b)(3) Requires that Illinois Exemption Laws Control.*

Any analysis of exemptions in a bankruptcy case begins with §522. 11 U.S.C. §522. Exemptions for a variety of assets are specifically provided for in the Code. 11 U.S.C. §522(d). But those exemptions are available only to debtors if applicable state law has authorized such debtors to use them. 11 U.S.C.

§522(b)(2). When a state has prohibited its residents from using the federal exemptions set forth in §522(d), a combination of exemptions provided for by state, local, and other nonbankruptcy laws may be used. 11 U.S.C. §522(b)(3). Illinois has prohibited the use of the specific federal exemptions set forth in §522(d) for its residents. 735 ILCS 5/12-1201. The Debtor is an Illinois resident.

    The Debtor does not dispute that, by reason of Illinois' prohibition against the use of the specific federal exemptions set forth in §522(d), he is required to use the exemptions set forth in §522(b)(3). Section 522(b)(3) provides, with limited exceptions not relevant here, for the use of exemptions under applicable state law plus any exemptions available under federal law other than §522(d). 11 U.S.C. §522(b)(3)(A). It also provides an exemption for a debtor's interest in property held "as a tenant by the entirety or joint tenant to the extent that such interest . . . is exempt from process under applicable nonbankruptcy law[.]" 11 U.S.C. §522(b)(3)(B). Finally, it provides for the exemption of certain retirement funds. 11 U.S.C. §522(b)(3)(C).

    On his amended Schedule C, the Debtor claimed his Illinois exemptions and, specifically as to the Pleasant Plains property, claimed his exemption under Illinois law. 735 ILCS 5/12-112. In his brief, however, the Debtor suggests that §522(b)(3)(B) provides independent authority for his claim that the Pleasant Plains property is exempt. He points out that the provision refers to "any interest" in property held as a tenant by the entirety and then argues that the language is broad and allows for all property titled in tenancy by the

entirety to be exempt without further analysis. But his argument overlooks the qualifying condition of the provision that limits such exemptions only to tenancy by the entirety and joint tenancy properties that are "exempt from process under applicable nonbankrutcy law." 11 U.S.C. §522(b)(3)(B). The Debtor cites no nonbankruptcy law that would exempt the Pleasant Plains property from process other than the Illinois exemption laws already applicable to the Pleasant Plains property pursuant to §522(B)(3)(A). Absent citation to any other applicable nonbankruptcy law that might support the Debtor's position, his argument that §522(b)(3)(B) is independent authority for his position must fail. Section §522(b)(3)(B) does not create a complete exemption in and of itself. Rather, some nonbankruptcy law that exempts the tenancy by the entirety property from process must exist in order for §522(b)(3)(B) to have a meaningful impact in a particular case. Here, the Debtor's reference to §522(b)(3)(B) adds nothing to the analysis. The nonbankruptcy law already applicable under §522(b)(3)(A)—Illinois exemption law—is the only nonbankruptcy law applicable under §522(b)(3)(B). Illinois law therefore controls the exemption decision here in all respects.

*B. The Pleasant Plains Property is Not Exempt.*

The Illinois Joint Tenancy Act provides that husbands and wives may hold property "maintained or intended for maintenance as a homestead by both husband and wife" as tenants by the entirety. 765 ILCS 1005/1c. With limited exceptions not relevant here, tenancy by the entirety property may not be "sold

upon judgment entered . . . against only one of the tenants[.]" 735 ILCS 5/12-112. Thus, tenancy by the entirety property that is homestead property owned by a husband and wife is exempt from process to satisfy debts owed only by the husband or the wife but not by both.

Bank of Springfield is a creditor of the Debtor but not of Jill Egizii. Bank of Springfield does not dispute that the Debtor and Jill Egizii are married. Rather, it disputes that the Pleasant Plains property is their homestead and argues that, if it is not their homestead, it cannot be owned in tenancy by the entirety and therefore would not be exempt from process to satisfy the debts of the Debtor. Illinois law is clear that tenancy by the entirety ownership is limited to homestead property. *Premier Prop. Mgmt, Inc. v. Chavez*, 191 Ill. 2d 101, 105, 728 N.E.2d 476, 479 (2000); *see also Maher v. Harris Trust & Savings Bank*, 506 F.3d 560, 562 (7th Cir. 2007). Thus, Bank of Springfield has correctly identified the dispositive issue here—whether the Pleasant Plains property is the Debtor's homestead.

The term "homestead" is not defined in either of the Illinois statutory provisions that allow for the creation and exemption of tenancy by the entirety property. But the term is defined elsewhere. The general homestead exemption available to Illinois residents defines a homestead as property "owned or rightly possessed by lease or otherwise and occupied by him or her as a residence[.]" 735 ILCS 5/12-901. The property tax exemption that the Debtor says he claims for the Laurel Street property is limited to homestead property that is defined as "residential property that is occupied by its owner or owners as his or their

principal dwelling place[.]" 35 ILCS 200/15-175(f). "A homestead is a property taxpayer's primary residence[.]" *Mulry v. Berrios*, 2017 IL App (1st) 152563, ¶1, 72 N.E.3d 1260, 1263. Importantly, under Illinois law, a person may not have more than one homestead. *Rasmussen v. Rasmussen*, 368 Ill. 137, 141, 13 N.E.2d 166, 169 (1938).

Once a person has established a homestead, the right to claim a homestead exemption or real estate tax exemption in the property is lost only through a voluntary conveyance, release, waiver, or abandonment. *In re Colton*, 591 B.R. 829, 832 (Bankr. C.D. Ill. 2018) (Perkins, J.). Abandonment "is defined as vacating the homestead premises and establishing residency elsewhere with no intention to reestablish residency in the homestead at some point in the future." *Id.* (citing *In re Moneer*, 188 B.R. 25, 27 (Bankr. N.D. Ill. 1995)). Absence for a period of time from the homestead, in and of itself, does not result in abandonment or forfeiture of the homestead. *Id.* (citing *Lehman v. Cottrell*, 298 Ill. App. 434, 438, 19 N.E.2d 111, 113-14 (1939)); *see also Maksym v. Board of Election Commissioners*, 242 Ill. 2d 303, 318-19, 950 N.E.2d 1051, 1060 (2011) (to meet election law residency requirements, once established, a person may be absent for months or even years without abandoning residence).

The Debtor has lived at the Laurel Street property since 1978 and affirmatively claims the property as his homestead for real estate tax purposes. He has never listed the property for sale; it was not for sale when he filed this case. He listed the Laurel Street property as his address on his petition, said

that he had not lived anywhere else in the last three years, and gave the Laurel Street address as his current residence when questioned at his examination. He claimed the property as exempt as his homestead on his original schedules before he knew it might be financially advantageous to claim the Pleasant Plains property as his homestead instead. The Debtor admits that, although he enjoys spending time there, due to his health conditions, the Pleasant Plains property is not a suitable place for him to live full-time.

Jill Egizii also identified the Laurel Street property as her current address when she was examined. And when discussing whether she and the Debtor intended to make the Pleasant Plains property their permanent home, she said that they ultimately did intend to do so but agreed with Bank of Springfield's attorney's suggestion that the Laurel Street property would have to be sold first. When the Pleasant Plains property was purchased on contract in 2017, Mrs. Egizii was an elected official of Leland Grove and was thus required to live in Leland Grove. 65 ILCS 5/3.1-10-5. It is therefore unlikely that the Debtor and his wife had an immediate intent to make the Pleasant Plains property their homestead and primary residence when they made the purchase. Mrs. Egizii makes no claim that she intended to immediately give up her elected office and, in fact, she did not do so. Further, she has identified no action that she took after her service in Leland Grove ended in 2019 to change her principal place of residence to the Pleasant Plains property.

All of the evidence, including the testimony of both the Debtor and Jill Egizii, establishes that the Laurel Street property was, without question, the

Debtor's principal place of residence and his homestead when he filed this case. The Laurel Street property has been his homestead for many years, and the Debtor has done nothing to change his homestead to the Pleasant Plains property. He has not changed his property tax exemption, nor has he identified any other step he might have taken to make the Pleasant Plains property his legal homestead. He does not even claim to have lived at the Pleasant Plains property during the three years before filing bankruptcy.

The Debtor argues that he and his wife spend more than half of their time at the Pleasant Plains property and suggests that fact alone is enough to support his tenancy by the entirety exemption. But the Debtor cited no authority for that proposition, and, to the contrary, case law holds that, once a homestead has been established, it is not lost due to absence. *Colton*, 591 B.R. at 832. Regardless of how much time he spends away from the Laurel Street property, it remains his homestead until he takes some affirmative action to change his homestead. *Id.* Further, the testimony of both the Debtor and Mrs. Egizii was imprecise as to the amount of time they spend at the Pleasant Plains property. The Debtor said that they usually spend one weeknight and the weekend at the Pleasant Plains property, but he did not explain exactly what he meant by the "weekend." Mrs. Egizii said that they spend Wednesdays and Friday through Sunday at the Pleasant Plains property. But arriving sometime on Friday and leaving sometime on Sunday does not mean that they spend a full three days and three nights every weekend as the Debtor's attorney now claims the evidence shows. The Debtor and his wife appear to have a flexible

-12-

schedule—he does some consulting work and she volunteers for several nonprofit organizations. Their testimony does not suggest that they follow a firm schedule and does not establish that they spend more than half of their time at the Pleasant Plains property. But, again, even if it did, that would not control the outcome here.

The Debtor claims that he had both a right and a duty to amend his schedules after he learned that he had incorrectly listed the Laurel Street property as owned in tenancy by the entirety. Fed. R. Bankr. P. 1009(a). That is true; the Debtor's amendment of his Schedule A to correct information previously misreported was proper. But the fact that the Debtor originally claimed that the Laurel Street property was his homestead was not incorrect and did not need to be amended. The amendment to move the homestead exemption to the Pleasant Plains property was made to try to increase the Debtor's exempt property and not to correct an error in the original documents. There is no evidence that the Pleasant Plains property is or has ever been the Debtor's homestead, but there is compelling evidence that the Laurel Street property has been the Debtor's homestead for many years. However liberal the rule allowing amendments to schedules may be, amendments must be accurate and supported by facts and evidence. The evidence does not support the Debtor's amended claim of a tenancy by the entirety exemption in the Pleasant Plains property.

Finally, the Debtor argues that, although Illinois allows only one property as an exempt homestead in a bankruptcy case, the law does not limit which

property a tenancy by the entirety exemption may be claimed in when a debtor owns more than one residential property. That is not an accurate statement of Illinois law. The tenancy by the entirety exemption is specifically limited to a debtor's homestead. 735 ILCS 5/12-112; 765 ILCS 1005/1c (by operation of law, tenancy by the entirety becomes joint tenancy when another property maintained as homestead). The Debtor's homestead is clearly the Laurel Street property, and his assertion that someday that may change and the Pleasant Plains property will become his homestead is not a basis for allowing the tenancy by the entirety exemption now. Bank of Springfield has met its burden of proof. Fed. R. Bankr. P. 4003(c). The tenancy by the entirety exemption in the Pleasant Plains property must be disallowed.

### IV. Conclusion

The outcome in this case is controlled by Illinois law. And, while Illinois law allows for an exemption of property held in tenancy by the entirety, the exemption only applies to a single property maintained as a homestead. 735 ILCS 5/12-112; 765 ILCS 1005/1c. Because the Pleasant Plains property is not the Debtor's homestead, the Illinois tenancy by the entirety exemption claimed by the Debtor in the property is properly disallowed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###